**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE TORRES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> 1-800-GOT-JUNK? LLC, <br><br><br> Defendant. | Case No. <br><br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> <u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT

Plaintiff Valerie Torres ("Plaintiff") brings this action against Defendant 1-800-GOT-JUNK? LLC ("Defendant" or "Got-Junk"), individually and on behalf of all others similarly situated. Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Got-Junk for surreptitiously monitoring and recording the telephonic communications between consumers and its customer service representatives without first providing notice or obtaining the customer's consent.

2. Got-Junk is a waste management company that provides junk removal services to residential customers. Since its inception in 1989, Got-Junk has become one of the largest residential waste removal companies in California and throughout the United States.

3. As a junk removal company, Defendant provides support to customers over the phone and provides quotes and scheduling appointments for its junk removal services. Defendant monitors and records these interactions. What Defendant fails to do, however, is disclose this fact to customers who receive calls initiated by Defendant.

4. Because Defendant fails to disclose to consumers that it is recording telephonic communications at the outset of the call, Defendant violated and continues to violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 632 and 632.7.

5. Both Penal Code §§ 632 and 632.7 play important roles in protecting the privacy of California residents. Secret monitoring and recording denies the customer an important aspect of privacy of communication – the right to control the nature and extent of the information they disclose.

CLASS ACTION COMPLAINT                                                                 1

6. Plaintiff brings this action on behalf of herself and a class of all persons whose telephonic communications were surreptitiously recorded by Defendant.

## PARTIES

7. Plaintiff Valerie Torres is a California citizen and resident, residing in Los Angeles, California. Ms. Torres is domiciliary of California.

8. Defendant 1-800-GOT-JUNK? LLC is a Delaware limited liability corporation headquartered in Vancouver, Canada. Defendant's sole member is RBDS Rubbish Boys Disposal Service Inc., a Canadian corporation headquartered in Vancouver, Canada. Defendant Got Junk is a prominent junk removal company.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

11. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

12. Got-Junk is a privately owned junk removal franchise that operates in the United States, Canada, and Australia. Got-Junk was founded in 1989 by Brian Scudamore: a high school drop-out student who saw an opportunity to pay for his college tuition by removing junk with a beatdown pickup truck which he initially

called "The Rubbish Boys."[1] Today, Got-Junk is one of the leading junk removal companies in the United States with a yearly revenue of over $400 million.[2]

13. As with any moving company, Defendant must field customer inquiries and provide support for any issues that may arise in connection to its services. To that end, Defendant supplies a catchy and easy-to-remember customer service number for consumers to call: 1-800-GOT-JUNK (*i.e.*, 1-800-468-5865). Defendant also utilizes other customer service numbers in subsequent calls with its customers depending on a customer's location.

14. When Defendant calls customers using any of these numbers, the customer service agent does not disclose that the call is being recorded. As such, customers have a reasonable expectation of privacy regarding any information that they divulge on the call, including personally identifying information, the identity of the objects they seek to dispose, and the address where those items are located (all of which is highly sensitive in nature). Customers maintain this expectation of privacy because Defendant does not disclose that the call is being recorded and Defendant never obtains customer consent to do so.

15. Contrary to Plaintiff and class members' belief, however, the conversations between customers and Defendant's agents are being surreptitiously recorded, including through the use of software provided by Invoca, Inc ("Invoca").

16. Defendant records and monitors customer calls through a software platform developed by Invoca, and potentially other platforms as well.

---

[1] CNBC, *Founder of 1-800-GOT-JUNK? dropped out of college to haul junk — now, he's eyeing a billion-dollar business* (Jan. 12, 2021), https://www.cnbc.com/2020/08/01/how-the-1-800-got-junk-founder-became-a-multimillionaire.html

[2] Franchise Chatter, *FDD Talk: 1-800-Got-Junk? Franchise Costs, Fees, Average Revenues and/or Profits (2022 Review)* (Nov, 27, 2022), https://www.franchisechatter.com/2022/11/27/fdd-talk-1-800-got-junk-franchise-costs-fees-average-revenues-and-or-profits-2022-review/

CLASS ACTION COMPLAINT                                                                 3

17. Invoca's software comprises a suite of tools which are focused on optimizing marketing campaigns and audience management by allowing companies to monitor and analyze customer-agent phone interactions. Invoca's software uses artificial intelligence technology to record and transcribe customers' phone calls, which it then analyzes to gain insight about the customer's purchasing journey. For example, Invoca enables companies to identify whether customer calls are being placed from numbers on their webpages or marketing campaigns. Invoca also provide analytics about these phone calls, including general issues derived from ubiquitous key words that it scans from call transcriptions. Invoca records the contents of these calls as they occur in real time.[3]

18. Defendant deliberately implemented the call recording and monitoring features of Invoca's software in an effort to improve its marketing campaigns.

19. In an advertising brochure about Got-Junk's incorporation of the Invoca software into its customer service protocol, Invoca writes:

> "When a potential customer uses one of the call center numbers on the 1-800-GOT-JUNK? website, an agent responds and manually records the call outcome in the company's customer relationship management (CRM) platform. And, before Invoca, that's where the information would have stayed. However, by using Google Click ID, Invoca was able to automatically stream that information, including specific details about the call outcome, back to Google Ads."[4]

20. Defendant deliberately monitors and records customer phone calls and

---

[3] "Unlike other systems that only begin recording once the agent answers, Invoca begins recording as soon as the call connects — and stays on the call no matter where it's transferred to — enabling you to capture the complete caller experience, every time." https://www.invoca.com/product/call-recordings-and-transcriptions

[4] https://assets-global.website-files.com/5dfbb65fcb94d5455876bad9/5f470ec01a4808358ec39317_Invoca-Case_Study-1-800-GOT-JUNK.pdf

shares them with third parties for marketing purposes, yet Defendant fails to provide notice to customers that this is occurring, nor does Defendant obtain customer consent to be recorded.

21.     In or about April of 2022, Ms. Torres called one of Defendant's customer service numbers to inquire about Defendant's services and obtain a quote for removing some personal items, using her cell phone. After placing this call, Defendant's agents called Ms. Torres' cell phone on various occasions up until May of 2022 to follow up on her previous inquiry. The phone calls took place while Ms. Torres was physically present in California. During the calls Defendant placed to her, Ms. Torres was never told that the call was being recorded, and she never consented to those recordings.

22.     Because Defendant did not disclose that its calls to Ms. Torres were being recorded, Ms. Torres reasonably expected that her communications with Defendant and its agents during the calls were not being recorded, and were therefore "confidential" as defined by California Penal Code § 632(c).

23.     On information and belief, Defendant was, in fact, recording Ms. Torres's call and captured the entire contents of her communications with the live agents using Invoca's software.

24.     Defendant's policy of monitoring and recording calls without informing customers is a uniform practice and occurs anytime a customer has a phone call with Defendant.

## CLASS ALLEGATIONS

25.     ***Class Definitions.***  Plaintiff Valerie Torres brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Section 632 Class"):

> All individuals who, while physically present in California, participated in an inbound telephone call with Got-Junk or one of its agents.

CLASS ACTION COMPLAINT                                                5

26. Plaintiff also seeks to represent a class, defined as follows (the "Section 632.7 Class"):

> All individuals who, while physically present in California and using a cellular telephone, participated in an inbound telephone call with Got-Junk or one of its agents.

27. Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

28. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

29. ***Commonality.*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a) Whether Defendant has a policy and practice of recording and/or monitoring telephone conversations with customers;

(b) Whether Defendant notifies customers that it is recording them;

(c) Whether Defendant obtains a customer's consent to be recorded at the outset of the telephone call;

(d) Whether Defendant instructed its agents to record and monitor

calls without disclosing to customers that they were doing so;

(e) Whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632 and invaded Plaintiff and the Class's privacy rights in violation of the California Constitution;

(f) Whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632.7;

(g) Whether Plaintiff and the Classes are entitled to injunctive relief under Cal. Penal Code § 637.2(b) to enjoin or restrain Got-Junk from committing further violations of Cal. Penal Code §§ 632 and 632.7.

(h) Whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

30. **Typicality.** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, called Got-Junk's customer service line using her cell phone and had her communications recorded without her consent.

31. **Adequacy.** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

32. **Superiority.** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the potential for inconsistent or contradictory judgments. In contrast, the

1  class action device presents far fewer management difficulties and provides the
2  benefits of single adjudication, economy of scale, and comprehensive supervision by
3  a single court on the issue of Defendant's liability. Class treatment of the liability
4  issues will ensure that all claims and claimants are before this Court for consistent
5  adjudication of the liability issues.

6  33.  Plaintiff brings all claims in this action individually and on behalf of
7  members of the Classes against Defendant.

## COUNT I
## Violation of Cal. Penal Code § 632

34.  Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

35.  Plaintiff brings this Count individually and on behalf of the members of the putative Section 632 Class.

36.  California Penal code § 632(a) provides, in pertinent part:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses [a] … recording device to … record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation.

37.  A defendant violates Section 632 unless it can show it had the consent of all parties to a communication prior to the moment the recording was made.

38.  Defendant, using computer software, intentionally monitored and recorded the telephonic communications between itself and its agents on the one hand and Plaintiff and other members of the Classes on the other.

39.  At no time did Defendant or any of its agents inform Plaintiff or the members of the Classes that the recording of their telephonic communications was taking place and at no time did Plaintiff or the members of the Classes consent to this

activity.

40. These communications were "confidential communications," as that term is used in Section 632, because Plaintiff and class members had objectively reasonable expectations of privacy with respect to any personal or financial information they disclosed during the course of those communications.

41. Defendant has therefore violated Cal. Penal Code § 632(a) by intentionally recording Plaintiff and the members of the Classes' telephonic communications without first notifying them or obtaining their consent.

42. Accordingly, Plaintiff and the members of the Classes have been injured by Defendant's conduct and, pursuant to Cal. Penal Code § 632, each seek damages of $5,000 per violation.

## COUNT II
### Violation of Cal. Penal Code § 632.7

43. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

44. Plaintiff brings this Count individually and on behalf of the members of the putative Section 632.7 Class.

45. California Penal Code § 632.7(a) prohibits the same conduct as described in Section 632, but extends this prohibition to communications involving a cellular telephone.

46. Though similar, Cal. Penal Code § 632 and § 632.7 are not duplicative and protect separate rights.

47. Cal. Penal Code § 632.7 grants a wider range of protection to conversations where one participant uses a cellular phone or cordless phone because it does not have the "confidential communication" requirement of Cal. Penal Code § 632.

48. A defendant violates Section 632.7(a) unless it can show it had the consent of <u>all</u> parties to a communication prior to the moment the recording was made.

49. Defendant, using computer software, intentionally monitored and recorded the telephonic communications between Plaintiff, and the members of the Section 632.7 Class, and its agents.

50. At no time did Defendant or any of its agents inform Plaintiff or the members of the Section 632.7 Class that the recording of their telephonic communications was taking place and at no time did Plaintiff or the members of the Section 632.7 Class consent to this activity.

51. Defendant has therefore violated Cal. Penal Code § 632.7(a) by intentionally recording Plaintiff or the members of the Section 632.7 Class's telephonic communications without first notifying them or obtaining their consent.

52. Accordingly, Plaintiff and the members of the Section 632.7 Class have been injured by Defendant's conduct and, pursuant to Cal. Penal Code § 637.2, each seek damages of $5,000 per violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Got-Junk, as follows:

a. For an order certifying the putative Classes and naming Plaintiff as the representative of the classes, and Plaintiff's attorneys as Class Counsel to represent the putative Classes;

b. For an order declaring that the Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the putative Classes on all counts asserted herein;

d. For statutory damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For injunctive relief as pleaded or as the Court may deem proper; and

g.  For an order awarding Plaintiff and the putative Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 18, 2023          **BURSOR & FISHER, P.A**.

By:   /s/ *L. Timothy Fisher*
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*